MARY MARTEL *vs.* MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY.

Middlesex. April 4, 1988. — July 14, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence*, Expert opinion, Safety improvements, Redirect examination.

At the trial of a negligence action wherein the plaintiff sought recovery for
injuries received when she was knocked down and run over by the
defendant's bus, testimony of the defendant's employee with respect to
the results of his investigation into the cause of the accident was properly
excludable insofar as the investigation was a prerequisite to subsequent
remedial safety measures adopted by the defendant. [3-5]
Certain evidence, properly excluded on direct examination of a plaintiff's
witness, was not admissible, on any other ground advanced at trial, on
redirect examination of that witness. [5-7]

CIVIL ACTION commenced in the Superior Court Department
on August 10, 1984.

The case was tried before *Robert V. Mulkern*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Saul A. Schapiro (Michael D. Hayes* with him) for the plaintiff.

*Jonathan P. Feltner (Lynne Spiegelmire Viti* with him) for the defendant.

HENNESSEY, C.J. The plaintiff appeals from a judgment on a jury verdict for the defendant in her action to recover for injuries sustained when she was run over by a bus owned and operated by the defendant. On the day of the accident, the plaintiff left her apartment to take one of the defendant's buses to her place of employment. She arrived at the bus stop five minutes before the bus's scheduled departure time. However, as she approached the bus, which was parked by a curb, it began slowly to pull away from the curb and to take a right turn onto an adjacent street. The plaintiff caught up with the bus and banged on its front door as it slowly made its turn. The driver did not stop the bus. As the bus straightened out, it knocked the plaintiff to the ground, and its rear wheels ran over her feet, causing her serious injury.

The defendant has a policy of investigating all accidents involving its buses to determine the cause of the accident and whether the bus driver could have prevented it. It is undisputed that the purpose of the investigation is to prevent future accidents by identifying drivers who require additional safety training. This accident was investigated by one of the defendant's employees, Charles Ramsay, whose investigation consisted of interviews with the bus driver and an inspection of the bus. After investigation, Ramsay concluded that the accident could have been prevented had the bus driver looked into his right front mirror as he was making the turn. He recorded this conclusion on an internal form which the defendant uses for this purpose (form OPS-105).

The plaintiff subpoenaed Ramsay to testify at the trial. The defendant filed a motion in limine, seeking, among other things, a ruling excluding any evidence as to Ramsay's opinion that the bus driver could have prevented the accident. After hearing, the judge granted this request. The plaintiff saved her rights as to this ruling.

In his direct examination of the witness, the plaintiff's counsel abided by the judge's ruling excluding evidence as to Ramsay's opinion that the bus driver could have prevented the acci-

dent. On cross-examination, defense counsel elicited Ramsay's opinion on two issues. First, he asked whether the bus driver exercised good judgment in commencing his route before the scheduled departure time. Second, he asked if the bus driver's previous testimony as to how he made the right turn was in accordance with good safety precaution. Ramsay answered both questions in the affirmative. The plaintiff's counsel then sought the judge's permission to conduct redirect examination of Ramsay as to his opinion that the bus driver could have prevented the accident, and to introduce Ramsay's report on the defendant's form OPS-105, contending that defense counsel had "opened the door" to such evidence by his questioning of Ramsay. The requests were denied, and the plaintiff saved her rights as to this ruling.[1]

Ultimately, the jury returned a verdict on special questions finding that the defendant was not negligent. The plaintiff appealed. We transferred the case to this court on our own motion, and now affirm.

The plaintiff challenges the judge's exclusion of evidence as to Ramsay's opinion that the bus driver could have prevented the accident. She argues, first, that the judge erred in his ruling to this effect on the defendant's motion in limine, and second, that, even if this ruling was not erroneous, the judge erred in continuing to exclude this evidence after defense counsel had "opened the door" thereto by his cross-examination of Ramsay.

In ruling on the defendant's motion in limine, the judge excluded the plaintiff's proffered evidence as improper expert opinion evidence on the ultimate issue in the case, i.e., negligence, which, if admitted, would invade the province of the jury. This reasoning was erroneous. "[E]xpert testimony on matters within the witness's field of expertise is admissible whenever it will aid the jury in reaching a decision, even if the expert's opinion touches on the ultimate issues that the

[1] On objection by defense counsel, the judge restricted the plaintiff's counsel's comments during closing argument as to the defendant's failure to call any witnesses. The plaintiff did not object to this ruling, and so this issue is not properly before us. Mass. R. Civ. P. 46, 365 Mass. 811 (1974). See, e.g., *Coupounas* v. *Madden*, 401 Mass. 125, 127 (1987).

jury must decide." *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982), and cases cited. *Commonwealth* v. *Chapin*, 333 Mass. 610, 625 (1956), and cases cited. Cf. Proposed Mass. R. Evid. 704 and Fed. R. Evid. 704 (1987). Nevertheless, although the judge relied on an erroneous ground in excluding this evidence, we decline to reverse the judgment for the defendant, as we conclude that the evidence was properly excludable as evidence of a subsequent remedial measure, as discussed below. "Where the evidence is inadmissible on one ground, the fact that the judge relied upon some other, incorrect, ground for excluding the evidence should not require reversal, since a retrial would probably only result in the exclusion of the evidence on the proper ground." *Commonwealth* v. *Mandeville*, 386 Mass. 393, 397 (1982).

Evidence of postaccident safety improvements is not admissible to prove negligence. *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 779 (1975). See, e.g., *Manchester* v. *Attleboro*, 288 Mass. 492 (1934); *Albright* v. *Sherer*, 223 Mass. 39, 42 (1915); *Shinners* v. *Proprietors of Locks & Canals on Merrimack River*, 154 Mass. 168 (1881). The predominant reason for this exclusionary rule derives from public policy unrelated to the fact-finding process, that "a contrary rule would discourage owners from making repairs to dangerous property." *doCanto*, *supra*. Cf. Advisory Committee Notes to Fed. R. Evid. 407 (1987). Our cases to date have involved evidence of actions more on the order of traditional "repairs," see, e.g., *doCanto*, *supra* (design improvements to commercial laundry ironer); *Nelson* v. *Economy Grocery Stores Corp.*, 305 Mass. 383, 389 (1940) (sweeping sidewalk); *National Laundry Co.* v. *Newton*, 300 Mass. 126, 127 (1938) (sanding street); *Manchester*, *supra* (barricading and illuminating trench); *Goodell* v. *Sviokcla*, 262 Mass. 317, 319 (1928) (nailing down board); *Beckles's Case*, 230 Mass. 272, 274 (1918) (repairs to elevator); *Albright*, *supra* (repairs to wagon); *Menard* v. *Boston & Me. R.R.*, 150 Mass. 386, 388 (1890) (stationing flagman at railroad crossing). However, we think that good public policy also requires the exclusion of the results of the defendant's investigation into the causes of an accident involving its bus.

Although not itself a "repair" of a dangerous condition, the investigation is the prerequisite to any remedial safety measure. Without discovering the cause of the accident, the defendant can scarcely hope to prevent its recurrence. The investigation is inextricably bound up with the subsequent remedial measures to which it may lead, and questions of admissibility of evidence as to each should be analyzed in conjunction and answered consistently. If, as a result of the investigation, the defendant had discharged the bus driver, or required him to undergo additional safety training, evidence of these steps would fall squarely within the rule excluding evidence of subsequent remedial measures. The investigation cannot sensibly be treated differently. To do so would discourage potential defendants from conducting such investigations, and so preclude safety improvements, and frustrate the salutary public policy underlying the rule. Accord, construing Fed. R. Evid. 407, *Maddox* v. *Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986); *Segura* v. *Reno*, 116 F.R.D. 42, 44 (D. Nev. 1987); *Alimenta (U.S.A.), Inc.* v. *Stauffer*, 598 F. Supp. 934, 940 (N.D. Ga. 1984). But see *Rocky Mountain Helicopters, Inc.* v. *Bell Helicopters Textron, A Div. of Textron, Inc.*, 805 F.2d 907, 918-919 (10th Cir. 1986); *Wilson* v. *Beebe*, 770 F.2d 578, 590 (6th Cir. 1985); *Westmoreland* v. *CBS, Inc.*, 601 F. Supp. 66, 67-68 (S.D.N.Y. 1984).

Because the plaintiff's proffered evidence as to Ramsay's opinion that the bus driver could have prevented the accident was excludable as evidence of a subsequent remedial measure, the plaintiff was not prejudiced by the judge's erroneous ruling on the motion in limine. We now address the plaintiff's alternative contention that, even if the evidence of Ramsay's opinion was properly excluded on direct examination, the plaintiff should have been permitted to introduce it on redirect examination because defense counsel "opened the door" to such evidence during this cross-examination of Ramsay.

The plaintiff contends that by eliciting Ramsay's opinion that the bus driver exercised good judgment in starting his route before the scheduled departure time, and that the bus driver's description of how he had made the right turn was in

accordance with good safety precaution, defense counsel opened the door for introduction on redirect examination of the previously excluded evidence. She argues that by eliciting this testimony, defense counsel created the erroneous impression that Ramsay was of the opinion that the driver had not acted negligently, and that the plaintiff should have been permitted to counter this erroneous impression by introducing the previously excluded evidence, which tended to show that Ramsay actually had concluded that the bus driver could have prevented the accident by looking into his mirror while making the turn.[2] We disagree. In the first place, the evidence was not relevant to the issue of the bus driver's leaving the bus stop before the scheduled departure time. Secondly, Ramsay did not base his opinion on what the bus driver had in fact done in making the turn, but on what the bus driver had *testified* that he had done. The purport of Ramsay's testimony was that the bus driver's *description* in his testimony of what he had done in making the turn was in accordance with good safety precaution.[3] Ramsay did not comment on the bus driver's credibility, but answered what was tantamount to a hypothetical question, in that he was asked to assume certain facts and to base his opinion on the assumed facts. The plaintiff's recourse was to attack the credibility of the bus driver's version of the facts, and that is exactly what her counsel did. For example, in his closing argument, the plaintiff's counsel brought to the jury's attention the inconsistency between the bus driver's testimony and the fact of the accident's occurrence. He argued

---

[2] The plaintiff further contends that the evidence should have been admitted as a prior inconsistent statement for the purpose of impeachment. However, as discussed, *infra*, the evidence was not inconsistent with Ramsay's testimony at trial. Moreover, the plaintiff did not argue this ground for limited admissibility to the judge, and so is precluded from arguing this issue for the first time on appeal. Cf. *Milley* v. *Prudential Ins. Co.*, 5 Mass. App. Ct. 38, 42-43 (1977).

[3] DEFENSE COUNSEL: "Did you hear the [bus driver] this afternoon tell how he made the turn that day?"
THE WITNESS: "Yes, sir."
DEFENSE COUNSEL: "Is that in accordance with good safety precaution?"
THE WITNESS: "Yes, sir."

pointedly that, if the bus driver had looked in his mirror while making the turn, as he testified he had, he would have seen the plaintiff, and the accident would not have occurred. The jury apparently did not accept this argument. But no erroneous impression was created that Ramsay was opining on the propriety of the bus driver's actions, nor was Ramsay's testimony inconsistent with his conclusion that the bus driver could have prevented the accident by looking in his mirror as he made the turn. Hence, the judge did not err in ruling that the plaintiff could not introduce the proffered evidence on redirect examination.

*Judgment affirmed.*